# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                          Case No. 08-CR-233

SCOTT E. GILLESPIE,

        Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN AND ORDER

On September 3, 2008, the grand jury returned a four count indictment alleging that Scott E. Gillespie ("Gillespie") distributed child pornography in violation of Title 18, United States Code, Section 2252(a)(2). On October 20, 2008, Gillespie filed two pretrial motions: motion to dismiss the indictment as insufficient, (Docket No. 6), memorandum in support, (Docket No. 7), and motion to suppress statements, (Docket No. 10), memorandum, (Docket No. 11), amended motion to suppress statements, (Docket No. 13), amended memorandum, (Docket No. 14). The government responded to the defendant's motions. (Docket No. 15.) Gillespie also filed a motion for discovery. (Docket No. 8), to which the government has not responded.

An evidentiary hearing was scheduled for November 24, 2008 to resolve the defendant's motion to suppress. The government did not have its witness present and therefore, with the consent of the defendant, the evidentiary hearing was re-scheduled for January 12, 2009.

A summary of the evidence adduced at the January 12, 2009 hearing is set forth below. The pleadings on the defendant's motions are closed and the matters are ready for resolution. A final

pretrial conference is scheduled for February 6, 2009 and a jury trial is scheduled to commence on February 17, 2009 before the Honorable Lynn Adelman.

**MOTION TO DISMISS THE INDICTMENT**

Gillespie contends that the indictment is deficient in light of <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002), because the indictment does not allege that the images are of real persons, as opposed to virtual images. Gillespie notes that technology makes it possible to confirm that actual persons are depicted in the images of alleged child pornography, such as reference to prior known actual victims. The defendant submits that the indictment is devoid of any such confirmation occurring in this case.

The government responds that Gillespie misunderstands the government's burden in this case; the government need only prove that the relevant image depicts a real child, not necessarily an "identified" child. Parenthetically, the government misunderstands the defendant's challenge. The defendant is not contending that the indictment is required to allege an "identified" child; the defendant's motion simply indicates that this in one method of establishing that the alleged child pornography portrays a real person.

In any event, the defendant's motion to dismiss is not well taken. In <u>Free Speech Coalition</u>, the Court held a ban on "virtual" child pornography, so-named because it is created without the use of actual minors, is unconstitutional. <u>Id.</u> at 256. However, at no point did the Court hold that confirmation in the charging document that the child depicted in the purported pornography is a real child is prerequisite for prosecution. It is the government's burden at trial to prove that the image depicts an actual child. This can be done in a variety of ways. For example, the government need only present the images themselves to satisfy its burden; ultimately, it will be up to the jury to decide whether the images depict real children. <u>See</u>, <u>e.g.</u>, <u>United States v. Rodriguez-Pacheco</u>, 475 F.3d 434, 440 (1st Cir. 2007); <u>United States v. Irving</u>, 452 F.3d 110, 121-22 (2d Cir. 2006); <u>United

2
Case 2:08-cr-00233-LA   Filed 01/15/09   Page 2 of 11   Document 20

States v. Sims, 428 F.3d 945, 956 (10th Cir. 2005); United States v. Slanina, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam); United States v. Kimler, 335 F.3d 1132, 1142 (10th Cir. 2003); United States v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) (citing United States v. Vig, 167 F.3d 443, 449-50 (8th Cir. 1999)).

The indictment contains descriptions of the videos that form the basis for each count in the indictment. These descriptions sufficiently allege that each video contains a depiction constituting child pornography. No more is required. Therefore, the court shall recommend that Gillespie's motion to dismiss the indictment, (Docket No. 6), be denied.

**MOTION TO SUPPRESS STATEMENTS**

**Evidentiary Hearing Summary**

On February 14, 2007, FBI agents executed a search warrant issued by this court at the defendant's residence, located on South 52nd Street in West Milwaukee, Wisconsin. (see 07-M-11). The agents, including FBI Special Agents Trent Koplinski ("Koplinski") and Jason Pleming ("Pleming"), arrived just before 7:00 am. The agents were dressed in tactical gear and had their firearms drawn. Pleming carried a tactical shield. Gillespie, who had just returned home from working 3rd shift, observed the agents on the sidewalk outside his home and as they approached his residence.

The agents knocked on the door of the residence and announced their presence. The defendant promptly answered the door. The agents informed Gillespie that they had a search warrant for his residence. Gillespie was directed to stand facing a wall with his hands on the wall as the agents secured the residence. Koplinski testified that "it's possible" that while Gillespie was being detained, as the agents were securing the residence, an entry team member asked Gillespie where the computers were located in the residence so the agents could get them secured. However, Gillespie testified that he was not asked any questions while he was being detained. Two others,

3

Gillespie's wife and his nephew, were also located in the residence and temporarily detained as the residence was secured. A rough floor plan of the residence was received as Exhibit 3.

Once the residence was secured, all agents holstered their weapons and Koplinski informed Gillespie of the reason for the search warrant, specifically that they were searching for child pornography. Koplinski asked Gillespie if he would talk to the agents about this matter further at the West Milwaukee police station. In response to Koplinski's question of whether he knew where the police station was, Gillespie responded that he did. Koplinski gave Gillespie the option of driving himself or, if he preferred, the agents would drive him and then give him a ride home after the interview. Koplinski testified that he informed Gillespie that he did not have to come with the agents and was free to leave, but Gillespie does not recall being told this or that he could drive on his own. Gillespie chose to accept a ride to the police station with the agents. Gillespie left the residence with the agents within 10 minutes of the agents' arrival.

At the West Milwaukee police station, Gillespie along with Special Agents Koplinski and Pleming, sat in a conference room. Although Koplinski did not consider Gillespie to be in custody, he nonetheless chose to provide Gillespie with his rights under <u>Miranda</u>. A copy of this Advice of Rights form was received as Exhibit 1. Gillespie and Koplinski placed their initials next to each right and the form was signed by Gillespie, Koplinski, and Pleming. Koplinski began by asking Gillespie background questions. Gillespie indicated that he has an I.Q. of 136 and thus was a "genius." When Koplinski asked whether Gillespie had ever downloaded child pornography, Gillespie stated he did not want to answer that question. Koplinski then moved on to another question. During the interview, Koplinski asked Gillespie for permission to search Gillespie's garage and any vehicles registered to him. Gillespie agreed, and a copy of this signed consent form was received as Exhibit 2. At the end of the interview, Gillespie stated that he would be making an appointment with his primary care physician in order to obtain a referral to a therapist who would

4

hopefully be able to provide him with the names of some attorneys who specialize in these sorts of cases. The entire interview lasted roughly 4 hours and included one break at Gillespie's request. Koplinski offered a second break but Gillespie declined. Throughout the interview, Gillespie was forthcoming and cooperative.

Koplinski then gave Gillespie a ride home. When they arrived, Koplinski asked Gillespie if he would like to go over the inventory of the items seized pursuant to the search warrant. Gillespie responded that he would and therefore Koplinski reviewed this form with Gillespie.

On February 22, 2007, Koplinski and Pleming returned to Gillespie's residence to ask a few follow-up questions. Koplinski's first question was whether Gillespie had retained counsel. Gillespie responded that although he had interviewed a couple attorneys, he had not yet made a decision on hiring counsel. Because Gillespie was not represented by an attorney, Koplinski proceeded to ask Gillespie additional questions. No Miranda warnings were provided; according to Koplinski, such advice was not necessary since Gillespie was not in custody and was at home. Koplinski asked about a third computer that Gillespie referred to in the prior interview but was not seized. Gillespie responded that it did not have a hard drive. In response to Koplinski's request, Gillespie led the agents into his basement so they could see the computer and verify that it was lacking a hard drive. Gillespie contends that this second interview ended when he told the agents that he would rather not talk any further without a lawyer. At no point on February 14 or 22, 2007 was Gillespie ever placed in handcuffs.

**Analysis**

> In order to protect an individual's right against self-incrimination under the Fifth Amendment, the Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 444 (1966), that suspects must be advised of certain rights before they are subjected to "custodial interrogation." A suspect must be both in custody and subject to "interrogation" to trigger the Miranda warnings requirement.

United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996) (citation omitted).

Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation. United States v. Jones, 21 F.3d 165, 170 (7th Cir.1994) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Further, a person may have his freedom restricted in some manner without being fully arrested and thus would not be entitled to the Miranda warnings. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). A person is "in custody" for Miranda purposes if he is formally arrested or is subject to a restraint on freedom of movement associated with a formal arrest. United States v. Lennick, 917 F.2d 974, 977 (7th Cir. 1990); United States v. Wyatt, 179 F.2d 532, 535 (7th Cir. 1999) (citing United States v. James, 113 F.3d 721 (7th Cir. 1997)).

In evaluating the "in custody" requirement, courts employ an objective analysis and review the totality of the circumstances. United States v. Fazio, 914 F.2d 950, 954 (7th Cir.1990); Wyatt, 179 F.3d at 535. Factors that may be significant in determining whether suspect is "in custody" include: whether and to what extent the suspect has been made aware that she is free to refrain from answering questions; whether there has been prolonged, coercive, and accusatory questioning; whether police have employed subterfuge to induce self-incrimination; the degree of police control over environment in which interrogation takes place; whether suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has right to interrupt prolonged questioning by leaving scene. Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996) (internal citations omitted). Ultimately, the court's focus in regards to custodial interrogation is coercion. United States v. Martin, 63 F.3d 1422, 1430 (7th Cir. 1995).

The court finds no basis to recommend suppression of any statement made by Gillespie. Although Gillespie may contend that he was in custody when he was asked to accompany the agents to the West Milwaukee police station, see, e.g., Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996); United States v. Jones, 21 F.3d 165, 169 (7th Cir. 1994), the court need not resolve this

question because it is undisputed that Gillespie was advised of his Miranda rights prior to any interrogation at the police station. Further, there is no contention that Gillespie did not understand these rights or that Gillespie did not voluntarily waive these rights. At no point during the interview did Gillespie invoke his right to refuse to answer questions. At most, Gillespie chose not to answer individual questions. There is a distinction between a suspect simply refusing to answer a question as opposed to invoking his right to remain silent. See United States v. Jumper, 497 F.3d 699, 705-06 (7th Cir. 2007). This raises the question whether Gillespie's refusal to answer individual questions required the agents to end the interrogation. In this regard, the court finds no support for Gillespie's argument. It is well-established that a suspect may pick and choose the questions to answer without prohibiting further interrogation. See id.

During oral argument, much focus was placed upon whether or not a statement indicating the location of the computers in the residence, made by Gillespie during the time he was detained while the agents were securing the residence, should be suppressed. However, the court has received no evidence that such a statement was actually made. Koplinski simply stated that it is possible that an agent may have asked this question; there is no evidence that Gillespie answered this question. Gillespie himself testified that he was not asked any questions at this point. Finally, the government stated that it had no record of Gillespie ever making such a statement.

Although resolution of this question is likely a purely academic exercise, under the hypothetical circumstances presented, the court again finds no basis to recommend suppression of any potential statement. A person who is detained during the execution of a search warrant is ordinarily not in custody for Miranda purposes. United States v. Saadeh, 61 F.3d 510, 520 (7th Cir. 1995); United States v. Burns, 37 F.3d 276, 281 (7th Cir. 1994). The Seventh Circuit noted that

> [m]ost detentions that occur during the execution of a search warrant, like most Terry stops, are comparatively nonthreatening. They are often short in duration. . . . Furthermore, detention in a person's own residence or hotel room could only add minimally to the public stigma associated with the search itself and would involve

7

neither the inconvenience nor the indignity associated with a compelled visit to the police station.

Burns, 37 F.3d at 281 (internal quotations omitted).

In Burns, the defendant sought suppression of certain statements she made during the execution of a search warrant at her hotel room. Id. at 278. The defendant asked to leave the hotel room numerous times, but she was detained and told to sit on the bed as two law enforcement officers searched the hotel room. Id. During the search, an officer asked Burns what she was doing in Milwaukee, to which she responded that she was visiting friends. However, later she said she did not have any friends in Milwaukee when the officer asked her who her friends were. Id. When an officer discovered a kilogram of cocaine in a dresser drawer wrapped in a hotel towel, the defendant disavowed ownership of the item. Id.

The Seventh Circuit held that the defendant was not in custody while she was detained during the execution of the search warrant, and therefore the Miranda warnings were not required. Id. at 281. The court explained its decision by stating that the defendant

> was detained for less than ten minutes prior to her arrest. She was not handcuffed or physically restrained in any way until she was formally placed under arrest. Only two law enforcement officers conducted the search, and they did not brandish weapons. Finally, the officer's questioning was limited in scope and duration.

Id.

Similarly, in Saadeh, the defendant sought to suppress statements he made while detained during a consensual search of a building in which he was an occupant. 61 F.3d at 519. Federal agents forcibly entered an auto repair shop during a drug deal by breaking a glass door with a battering ram. Id. at 515. The agents then secured the building, ordered the occupants to a central location, patted them down, and ordered them to empty their pockets. Id. The agents obtained consent to search the building, and while conducting the search, an agent asked the defendant if a toolbox was his. The defendant responded that it was, and the agent used keys that the defendant
8

had earlier removed from his pockets to open the toolbox. Id. Inside the toolbox, the agent found $35,000. Relying upon Burns, the Seventh Circuit again held that Miranda was not required and stated,

> [the defendant] was not detained for an unreasonably long period of time prior to his eventual arrest. The officers did not handcuff or physically restrain him in any way until they formally placed him under arrest. The verbal exchange between him and the officer took place shortly after their entry. At the time he was questioned, [the defendant] had been treated no differently from other building occupants, all but two of whom were ultimately released and not prosecuted. As [the defendant] stipulated, he was not under arrest. Moreover, [the defendant] was not the isolated target of any directed questioning; in fact, the officer who asked the question did not even know [the defendant's] identity at the time he posed the question. Finally, the officer's questioning was limited in scope and duration--a single question.

Id. at 520.

Gillespie was not handcuffed, the detention occurred in his own home, the detention was very brief, and the question, if it was asked at all, was a single, isolated, and relatively benign question. Accordingly, should there be any statement to be suppressed, the court finds no basis to recommend suppression.

Finally, with respect to the February 22, 2007 interview, the court finds that there is absolutely no reason to conclude that Gillespie was in custody so as to be entitled to receive his Miranda warnings. Although it is possible for a suspect to be in custody within his own home, see Orozco v. Texas, 394 U.S. 324 (1969), based upon the evidence presented at the evidentiary hearing, the court cannot conclude that a reasonable person in Gillespie's position would believe he was in custody. The agents came to his own home, were invited in by Gillespie, engaged in cordial conversation, and upon Gillespie indicating that he did not wish to talk further until after he consulted with an attorney, the agents promptly left. There is simply nothing in the record to support the conclusion that Gillespie was anything other than a consensual encounter.

9
Case 2:08-cr-00233-LA    Filed 01/15/09    Page 9 of 11    Document 20

Additionally, the court finds no basis to conclude that Gillespie's prior ambiguous mention of possibly receiving a referral to an attorney, which Gillespie offered in response to Koplinski's question of what Gillespie intended to do next, constituted an invocation of his right to counsel to preclude the agents from subsequently re-interrogating Gillespie. See, e.g., McNeil v. Wisconsin, 501 U.S. 171 (1991); Edwards v. Arizona, 451 U.S. 477 (1981). Accordingly, for the reasons set forth above, the court shall recommend that Gillespie's motion to suppress statements, (Docket Nos. 10, 13), be denied.

**MOTION FOR DISCOVERY**

Gillespie filed a "Motion to Obtain Mirror Image of Hard Drive under Protective Order." (Docket No. 8.) In this motion, Gillespie contends that its is "absolutely necessary for defense counsel and a computer expert retained by Gillespie to obtain, review, examine and analyze a mirror image of all the contents of the hard drive(s) in the possession of the United States of America." (Docket No. 8 at 2.)

On first impression, it appears that Gillespie is barred from obtaining the discovery he requests by the Adam Walsh Child Projection and Safety Act of 2006, Pub. L. 109-248, specifically 18 U.S.C. § 3509(m), which states:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2) (A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
>> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

However, the discovery dispute in question centers on the phrase "reasonably available to the defendant." At the conclusion of the evidentiary hearing, defendant's counsel discussed at length the access he and the defendant's expert have been provided to the hard drive seized by the government and the additional access to information he contends is necessary. Based upon the discussion, it appears that the parties will attempt to resolve the dispute. Accordingly, Gillespie's motion shall be denied without prejudice. If the dispute is not resolved after good faith attempts to do so, the defendant can refile his motion.

**IT IS THEREFORE RECOMMENDED** that Gillespie's Motion to Dismiss the Indictment, (Docket No. 6), be **denied**.

**IT IS FURTHER RECOMMENDED** that Gillespie's Motion to Suppress Statements, (Docket Nos. 10, 13), be **denied**.

**IT IS FURTHER ORDERED** that Gillespie's motion for discovery, (Docket No. 8), is **denied without prejudice**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this <u>15th</u> day of January, 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
